IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

MANUEL DIAZ,
        Petitioner,

vs.                                Case No.:  4:15cv35/MW/EMT

FLORIDA COMMISSION ON OFFENDER REVIEW, et al.,
        Respondents.
_____/

## REPORT AND RECOMMENDATION

      This cause is before the court on Petitioner's petition for writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 (doc. 1).  Respondent Florida Commission on Offender Review ("FCOR")[1] filed an answer (doc. 8).[2]  Petitioner filed a reply (doc. 10).

      The case was referred to the undersigned for the issuance of all preliminary orders and any recommendations to the district court regarding dispositive matters.  *See* N.D. Fla. Loc. R. 72.2(B); *see also* 28 U.S.C. § 636(b)(1)(B), (C) and Fed. R. Civ. P. 72(b).  After careful consideration of all issues raised by Petitioner, it is the opinion of the undersigned that no evidentiary hearing is required for the disposition of this matter, Rules Governing Section 2254 Cases 8(a).  It is further the opinion of the undersigned that the pleadings and attachments before the court show that Petitioner is not entitled to relief.

## I.      BACKGROUND AND PROCEDURAL HISTORY

      The relevant aspects of the procedural background of this case are undisputed (*see* doc. 10 at 1) and established by the state court record (*see* doc. 8).[3]  On March 21, 1995, the Circuit Court

---

[1] The FCOR was formerly known as the Florida Parole Commission.

[2] Respondent Julie L. Jones, Secretary of the Florida Department of Corrections ("FDOC"), filed a Limited Response acknowledging that she was a properly named Respondent, but stating that because Petitioner's habeas petition challenges only the actions of the FCOR, she defers to the FCOR's response to the petition (*see* doc. 7).

[3] Hereinafter all citations to the state court record refer to the exhibits submitted with the FCOR's answer (doc. 8).  If a cited page has more than one page number, the court cites to the "Bates stamp" page number.

in and for Leon County, Florida, issued a judgment and sentence in Case No. 92-2940-CFA, adjudicating Petitioner guilty of robbery with a gun, attempted second degree murder, and aggravated battery with a deadly weapon, and sentencing him to thirty-seven years in prison on the robbery count, fifteen years in prison on the attempted second degree murder count, and fifteen years in prison on the aggravated battery count (*see* Ex. 3, sub-exhibit A).

On April 25, 2010, the FCOR issued an order that Petitioner be released on to conditional release supervision until February 13, 2031 (*see* Ex. 3, sub-exhibit B).  On November 18, 2011, Petitioner was arrested for possession of cocaine and paraphernalia (*see* Ex. 3, sub-exhibit C).  On November 21, 2011, the FCOR issued a warrant for Petitioner's arrest for violating the conditions of his supervision (*see id.*).  On January 5, 2012, Petitioner was notified that the alleged violations of his supervision were as follows:

> 1.     Violated Condition 4(b) by using or possessing narcotics, drugs, or marijuana, unless prescribed by a physician, in that on or about November 18, 2011, he did use and/or possess cocaine, not prescribed by a physician.
>
> 2.     Violated Condition 7 by failing to obey all laws, ordinances or statutory conditions of Conditional Release, in that on or about November 18, 2011, in Dade County, Florida, he did unlawfully possess/constructively possess a controlled substance, to wit:  cocaine.
>
> 3.     Violated Condition 7 by failing to obey all laws, ordinances or statutory conditions of Conditional Release, in that on or about November 18, 2011, in Dade County, Florida, he did unlawfully use or possess with intent to use, drug paraphernalia, to prepare, test, store, contain, conceal, inject, ingest, inhale or otherwise introduce into the human body a controlled substance.
>
> 4.     Violated Special Condition 16 which states, "You shall have a mandatory curfew where you shall be confined to your residence during the hours from 10:00 p.m. to 6:00 a.m., except for work, treatment needs and religious and additional activities as verified and approved by your Conditional Release Supervisor," in that on November 18, 2011, at approximately 12:27 a.m, he was not confined to his approved residence, as evidenced by his arrest in Dade County, Florida, Case #F11-30013 [sic].

(*see* doc. 8 at 3; Ex. 1, sub-exhibit A at A11; Ex. 3, sub-exhibit H).

A revocation hearing was held on January 20, 2012, and February 24, 2012 (Ex. 3, sub-exhibit I).  The parole examiner found Petitioner guilty of wilfully and substantially violating the

terms and conditions of his conditional release as alleged in #2 and #4 *supra* (he unlawfully possessed or constructively possessed cocaine, and he violated his curfew) (*id.*).  The examiner recommended that Petitioner's supervision be revoked (*id.*).  On April 18, 2012, the FCOR revoked Petitioner's conditional release, effective November 18, 2011, based upon the hearing examiner's determination that Petitioner violated the conditions of his supervision as stated in the hearing report (Ex. 3, sub-exhibit J).  The FPC ordered Petitioner returned to FDOC custody and denied Petitioner credit for time on conditional release (*id.*).

On June 19, 2013, Petitioner filed a counseled petition for writ of habeas corpus in the Circuit Court in and for Leon County, Florida, Case No. 2013-CA-172 (Ex. 1).  On October 24, 2013, the state circuit court denied the petition (Ex. 5).  On November 20, 2013, Petitioner filed a petition for writ of certiorari in the Florida First District Court of Appeal ("First DCA"), Case No. 1D13-5754, seeking review of the lower court's decision (Ex. 6).  On April 2, 2014, the First DCA denied the petition on the merits (Ex. 10).  <u>Diaz v. Fla. Parole Comm'n</u>, 136 So. 3d 1217 (Fla. 1st DCA 2014) (Table).  The mandate issued April 24, 2014 (*id.*).

Petitioner filed the instant federal habeas action on January 20, 2015 (doc. 1).

II.      STANDARD OF REVIEW

Section 2254(a) of Title 28 provides that "a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court" upon a showing that his custody is in violation of the Constitution or laws of the United States.  As the instant petition was filed after April 24, 1996, it is subject to the more deferential standard for habeas review of state court decisions under § 2254 as brought about by the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA).  Pub.L. 104-132, § 104, 110 Stat. 1214, 1218–19.  In relevant part, section 2254(d) now provides:

> (d)  An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> > (1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2)   resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C.A. § 2254 (2002).

The United States Supreme Court explained the framework for § 2254 review in <u>Williams v. Taylor</u>, 529 U.S. 362, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000).[4]  The appropriate test was described by Justice O'Connor as follows:

> In sum, § 2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court.  Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied—the state court adjudication resulted in a decision that (1) "was contrary to . . . clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States."  Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

<u>Id.</u>, 529 U.S. at 412–13 (O'Connor, J., concurring); <u>Ramdass v. Angelone</u>, 530 U.S. 156, 120 S. Ct. 2113, 2119–20, 147 L. Ed. 2d 125 (2000).  In employing this test, the Supreme Court has instructed that on any issue raised in a federal habeas petition upon which there has been an adjudication on the merits in a formal State court proceeding, the federal court should first ascertain the "clearly established Federal law," namely, "the governing legal principle or principles set forth by the Supreme Court at the time the state court render[ed] its decision."  <u>Lockyer v. Andrade</u>, 538 U.S. 63, 71–72, 123 S. Ct. 1166, 155 L. Ed. 2d 144 (2003).  The law is "clearly established" if Supreme Court precedent at the time "would have compelled a particular result in the case."  <u>Neelley v.</u>

---

[4] Unless otherwise noted, references to <u>Williams</u> are to the majority holding, written by Justice Stevens for the Court (joined by Justices O'Connor, Kennedy, Souter, Ginsburg, and Breyer) in parts I, III, and IV of the opinion (529 U.S. at 367–75, 390–99); and Justice O'Connor for the Court (joined by Justices Rehnquist, Kennedy, Thomas, and—except as to the footnote—Scalia) in part II (529 U.S. at 403–13).  The opinion of Justice Stevens in Part II was joined by Justices Souter, Ginsburg, and Breyer.

Nagle, 138 F.3d 917, 923 (11th Cir. 1998), *overruled on other grounds by* Parker v. Head, 244 F.3d 813, 835 (11th Cir. 2001).

Next, the court must determine whether the State court adjudication is contrary to the clearly established Supreme Court case law, either because "'the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases' or because 'the state court confronts a set of facts that are materially indistinguishable from a decision of th[e] [Supreme] Court and nevertheless arrives at a result different from [Supreme Court] precedent.'"  Lockyer, 538 U.S. at 73 (quoting Williams, 529 U.S. at 405–06).  The Supreme Court has clarified that "[a]voiding these pitfalls does not require citation to our cases—indeed, it does not even require awareness of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." Early v. Packer, 537 U.S. 3, 8, 123 S. Ct. 362, 365, 154 L. Ed. 2d 263 (2002) (quoting Williams, 529 U.S. at 405–06).  If the State court decision is found in either respect to be contrary, the district court must independently consider the merits of the petitioner's claim.  Moreover, where there is no Supreme Court precedent on point, the state court's conclusion cannot be contrary to clearly established federal law.  *See* Henderson v. Campbell, 353 F.3d 880, 890 n. 15 (11th Cir. 2003).

If on the other hand, the State court applied the correct Supreme Court precedent and the facts of the Supreme Court cases and the petitioner's case are not materially indistinguishable, the court must go to the third step and determine whether the State court "unreasonably applied" the governing legal principles set forth in the Supreme Court's cases.  The standard for an unreasonable application inquiry is "whether the state court's application of clearly established federal law was objectively unreasonable."  Williams, 529 U.S. at 409.  Whether a State court's decision was an unreasonable application of a legal principle must be assessed in light of the record the court had before it.  Holland v. Jackson, 542 U.S. 649, 652, 124 S. Ct. 2736, 2737–38, 159 L. Ed. 2d 683 (2004) (per curiam); *cf.* Bell v. Cone, 535 U.S. 685, 697 n.4, 122 S. Ct. 1843, 1851 n.4, 152 L. Ed. 2d 914 (2002) (declining to consider evidence not presented to state court in determining whether its decision was contrary to federal law).  An objectively unreasonable application of federal law occurs when the State court "identifies the correct legal rule from Supreme Court case law but unreasonably applies that rule to the facts of the petitioner's case" or "unreasonably extends, or unreasonably declines to extend, a legal principle from Supreme Court case law to a new context."

Putman v. Head, 268 F.3d 1223, 1241 (11th Cir. 2001).  "In determining whether a state court's decision represents an unreasonable application of clearly established federal law, a federal court conducting habeas review 'may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable.'"  Gill v. Mecusker, 633 F.3d 1272, 1287 (11th Cir. 2011) (quoting Williams, 529 U.S. at 411) (citing Harrington v. Richter, 562 U.S. 86, 103, 131 S. Ct. 770, 178 L. Ed. 2d 624 (2011)).  The AEDPA's "unreasonable application" standard focuses on the state court's ultimate conclusion, not the reasoning that led to it.  See Gill, supra at 1291 (citing Harrington).  Under § 2254(d), a habeas court must determine what arguments or theories supported or could have supported the state court's decision, and then ask whether it is possible that fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of the Supreme Court.  See Harrington, 562 U.S. at 102; see also Gill, supra, at 1292 (the federal district court may rely on grounds other than those articulated by the state court in determining that habeas relief was not warranted, so long as the district court did not err in concluding that the state court's rejection of the petitioner's claims was neither an unreasonable application of a Supreme Court holding nor an unreasonable determination of the facts).

Section 2254(d) also allows federal habeas relief for a claim adjudicated on the merits in State court where that adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(2).  The Supreme Court has clarified that: "a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding."  Miller-El v. Cockrell, 537 U.S. 322, 340, 123 S. Ct. 1029, 1041, 154 L. Ed. 2d 931 (2003) (dictum).

When performing its review under § 2254(d), the federal court must bear in mind that any "determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence."  28 U.S.C. § 2254(e)(1); see e.g., Miller-El, 537 U.S. at 340 (explaining that a federal court can disagree with a state court's factual finding and, when guided by AEDPA, "conclude the

decision was unreasonable or that the factual premise was incorrect by clear and convincing evidence"); Jones v. Walker, 469 F.3d 1216, 1226–27 (11th Cir. 2007) (holding that § 2254(d)(2)'s "unreasonable determination" standard "must be met by clear and convincing evidence," and concluding that that standard was satisfied where prisoner showed "clearly and convincingly" that the state court's decision "contain[ed] an 'unreasonable determination' of fact."). The "unreasonable determination of the facts" standard is only implicated to the extent that the validity of the state court's ultimate conclusion is premised on unreasonable fact finding. See Gill, 633 F.3d at 1292. A petitioner is not entitled to relief unless he demonstrates by clear and convincing evidence that the record reflects an insufficient factual basis for affirming the state court's decision. Id.

Only if the federal habeas court finds that the petitioner satisfied AEDPA, and § 2254(d), does the court take the final step of conducting an independent review of the merits of the petitioner's claims. See Panetti v. Quarterman, 531 U.S. 930, 953, 127 S. Ct. 2842, 2858, 168 L. Ed. 2d 662 (2007); Jones, 469 F.3d 1216 (same). The writ will not issue unless the petitioner shows that he is in custody "in violation of the Constitution or laws and treaties of the United States." 28 U.S.C. § 2254(a).

Within this framework, the court will review Petitioner's claims.

III.    PETITIONER'S CLAIMS

A.    Ground One:  "The evidence is insufficient to establish that Petitioner constructively possessed cocaine."

Petitioner contends there was insufficient evidence to support the violation for possession of cocaine (doc. 1 at 4–9). Petitioner asserts the FCOR hearing officer based his finding of guilt on the following:

> A finding of guilty was made that on or about November 18, 2011, in Dade County, Florida, the releasee did unlawfully possess/constructively possess a controlled substance, to wit:  cocaine, based upon the testimony of Police Officer Bianchi that he recovered two green baggies containing suspect rock cocaine, which the lab report confirmed was cocaine, from behind the passenger seat of a vehicle driven by releasee, which he had control or dominion of and the officer's testimony that the releasee asked him how he knew where the drugs were reflects that the releasee had knowledge of the cocaine.

(doc. 1 at 7). Petitioner contends the examiner's factual findings were unsupported by a preponderance of the evidence (*id.*). Petitioner alleges Robert Scott testified to the following facts at the revocation hearing: (1) the cocaine belonged to him, (2) he placed the cocaine under the seat of the vehicle driven by Petitioner and in which he (Scott) was a passenger, when Officer Bianchi stopped the vehicle, and (3) Petitioner did not know that Scott was in possession of cocaine at the time of the stop (*id.* at 4–5). Petitioner asserts there was no evidence presented at the violation hearing that refuted Mr. Scott's testimony (*id.*). He further asserts that the criminal charge filed against him for possession of cocaine was dropped (*id.*).

Petitioner contends the FCOR's revocation decision was based upon an unreasonable determination of the facts, and was contrary to and an unreasonable application of Morrissey v. Brewer, 408 U.S. 471 (1972) (doc. 1 at 8–9). He asserts he presented this claim to the state courts in his state habeas petition and his petition for writ of certiorari (*id.* at 9).

The FCOR admits that this claim "appears" to be exhausted (doc. 8 at 5). The FCOR argues that this court is without jurisdiction to review the claim, because Petitioner has not raised any issues of federal constitutional dimension and instead challenges only state law and the application of that law to his particular circumstances (*id.* at 7–10). The FCOR alternatively argues that Petitioner's claim is without merit, because he failed to demonstrate that the state court's adjudication of his claim was based upon an unreasonable determination of the facts, or was contrary to or an unreasonable application of clearly established federal law (*id.* at 12–14).

1.     Clearly Established Federal Law

A claim of insufficiency of the evidence derives from the Fourteenth Amendment due process requirement that the evidence presented at trial be sufficient to convict. Although the Supreme Court has not specifically held that the Due Process Clause requires sufficiency of the evidence in proceedings involving revocation of probation, parole, or other types of supervision, it has suggested this. *See* Black v. Romano, 471 U.S. 606, 615–16, 105 S. Ct. 2254, 85 L. Ed. 2d 636 (1985) ("The decision to revoke Romano's probation satisfied the requirements of due process . . . . The courts below concluded, and we agree, that there was sufficient evidence to support the state court's finding that Romano had violated the conditions of his probation."); *see also* Douglas v. Buder, 412 U.S. 430, 93 S. Ct. 2199, 37 L. Ed. 2d 52 (1973) (probation revocation invalid under Due

Process Clause where there was no evidentiary support for finding that probation conditions were violated).  However, as recognized by the Eleventh Circuit, the Supreme Court has not established that due process in a revocation proceeding requires proof beyond a reasonable doubt that the parolee or conditional releasee committed the alleged violation.  *See* United States v. Taylor, 931 F.2d 842, 848 (11th Cir. 1991) (there is no requirement in a probation revocation hearing to prove beyond a reasonable doubt that the defendant committed the alleged acts; all that is required is that the evidence reasonably satisfy the judge that the conduct of the probationer has not been as good as required by the conditions of probation).  Indeed, the Supreme Court has not specifically stated the standard of proof that must be met in revocation proceedings to satisfy the Due Process Clause. *See, e.g.*, Black, 471 U.S. at 615–16 ("Bearden v. Georgia [, 461 U.S. 660, 666, & n.7, 103 S. Ct. 2064, 76 L. Ed. 2d 221 (1983)] recognized substantive limits on the automatic revocation of probation where an indigent defendant is unable to pay a fine or restitution.  We have no occasion in the present case, however, to decide whether concerns for fundamental fairness prohibit the automatic revocation of probation in any other context."); Douglas, *supra*.

Under Florida law, it is the hearing examiner's function to consider all the evidence presented, resolve conflicts, judge credibility of witnesses, draw permissible inferences from the evidence, and reach ultimate findings of fact.  *See* Heifetz v. Dep't of Bus. Regulation, 475 So. 2d 1277, 1281 (Fla. 1st DCA 1985).  The FCOR is bound to accept the hearing examiner's findings if the findings are supported by competent, substantial evidence.  *See* Tedder v. Fla. Parole Comm'n, 842 So. 2d 1022, 1025 (Fla. 1st DCA 2003) (parole commission is not at liberty to reweigh the evidence considered by the hearing examiner where the examiner's finding is supported by competent, substantial evidence); *see also* Richardson v. Fla. Parole Comm'n, 924 So. 2d 908 (Fla. 1st DCA 2006) (parole commission improperly re-weighed evidence in rejecting examiner's conclusions instead of determining whether competent, substantial evidence supported examiner's findings).  If, as is often the case, the evidence presented supports two inconsistent findings, it is the hearing officer's role to decide the issue one way or the other.  Tedder, 842 So. 2d at 1025.

2.      Federal Review of State Court Decision

Petitioner raised his sufficiency-of-the-evidence challenge to the cocaine possession violation in the first claim of his state habeas petition (Ex. 1 at 134–39).  The state court adjudicated Petitioner's  claim as follows:

> Plaintiff first claims that insufficient evidence of Plaintiff s possession of cocaine exists.  He relies upon the admission of passenger Scott that the cocaine was his and not the Plaintiff's and <u>Martoral v. State</u>, 946 So. 2d 1240 (Fla. 4th DCA 2007).
>
> The facts in this case reflect that Officer Bianchi conducted a stop of the vehicle driven by Plaintiff.  He testified that he observed the Plaintiff in the vehicle driver's seat extending his right hand and dropping or putting something behind the passenger seat.  He further testified that he maintained a clear view of the occupants in the vehicle and after the passenger was removed from the vehicle, he observed and found suspect rock cocaine and paraphernalia.
>
> The Court finds that the officer's direct testimony of the Plaintiff's hand movements toward the area where the cocaine and paraphernalia was found is sufficient evidence to establish that the Plaintiff had dominion and control over the drugs.  In <u>Meme v. State</u>, 72 So. 3d 254, (Fla 4th DCA 2011), the Court upheld a finding of constructive possession of cocaine, where the officer located the drugs under the seat in the same area where the defendant driver was observed to have bent down towards right before the stop.  The defendant was also nervous and sweating and made the incriminating statements, "*I'm going to jail*," and "*[m]y life is over*." <u>Id.</u> at 255.  As applied here, the Plaintiff was observed to throw or put something behind the passenger seat where the cocaine was found.  He was noted to be sweating and made incriminating statements that the officer was setting him up and accusing the officer of going exactly to where the drugs were located.  The testimony of Scott reflects that he told Plaintiff that cocaine was in the vehicle.  Furthermore, like Meme, Plaintiff "offered no . . . innocent explanation for the movement observed by the officer, instead claiming that he did not lean down, thus presenting the disputed issue of fact."  <u>Id.</u> at 257.  Plaintiff denied ever reaching behind the seat. The totality of the independent evidence is sufficient to prove possession of the cocaine in this case.  Knowledge was demonstrated by the Plaintiff's statements and dominion and control are supported by the testimony of the Plaintiff's movements in the vehicle.  This claim is therefore denied.

(Ex. 3 at 332–33).  Petitioner sought review of the circuit court's decision on this issue by presenting argument on it in his petition for writ of certiorari in the First DCA (Ex. 6 at 3–5, 6–7).  The First DCA denied the petition on the merits (Ex. 10).

Condition 7 of Petitioner's conditional release required that Petitioner obey all laws (Ex. 3, sub-exhibit B). Petitioner was charged with violating Condition 7 by unlawfully possessing or constructively possessing cocaine on or about November 18, 2011 (Ex. 3, sub-exhibit H). The hearing examiner found Petitioner guilty of the violation based upon the testimony of Police Officer Mario Bianchi that: (1) he recovered two green baggies containing suspect rock cocaine from behind the passenger seat of a vehicle driven by Petitioner, (2) Petitioner had control or dominion of the vehicle, and (3) Petitioner asked him (Officer Bianchi) how he knew where the drugs were, which suggested that Petitioner knew of the presence of cocaine in the vehicle (Ex. 3, sub-exhibit I).

The factual findings of the hearing examiner and state court with regard to the substance of Officer Bianchi's testimony are supported by the record. According to the transcript of the revocation hearing, Officer Bianchi testified to the following: (1) he conducted a stop of the vehicle driven by Petitioner after the vehicle made an abrupt u-turn upon the officer's approach; (2) he observed Petitioner in the driver's seat, extending his right hand and dropping or putting something behind the passenger seat; (3) he maintained a clear view of the vehicle's occupants, and after the occupants were removed from the vehicle, he opened the passenger side door and observed a clear green baggie; (4) after moving the passenger seat forward, he observed a second clear green baggie containing what appeared to be cocaine, as well as a glass pipe; (5) Petitioner was sweating; (6) Petitioner accused him of "setting him up" by going exactly to where the drugs were located, and he then accused Mr. Scott of setting him up; (7) after Petitioner was arrested, Petitioner told a doctor (in the presence of Officer Bianchi) that he had used drugs that night; (8) the contents of the baggies were tested by the police department's forensic drug analysis laboratory, and identified as cocaine; and (9) at no time did the passenger state that the cocaine was his (Ex. 1, sub-exhibit A at A25–A44). The police department's laboratory report, which was admitted as evidence at the revocation hearing, indicated that the substance recovered from the vehicle was cocaine (*see* Ex. 3, sub-exhibit I; *see also* Ex. 1, sub-exhibit A at A12).

Robert Scott testified, via telephone, to the following: (1) on the day in question, Petitioner drove him home after they finished working at a pizza shop; (2) Petitioner asked him if he "had anything," and he responded no, but he lied; (3) when they were a block from Scott's house,

Petitioner made a u-turn, and a police car pulled behind them; (4) Petitioner again asked Scott if he "had anything on him"; (5) Scott responded yes, and put crack cocaine and a crack pipe between the passenger seat and the passenger door; (6) the officer asked Scott to step out of the car, and he complied; (7) the officer pulled Petitioner our of the car; (8) the cocaine and crack pipe belonged to him (Scott); (9) Petitioner did not know that he had cocaine or a pipe in his possession; and (10) Scott told the officer that the cocaine and crack pipe belonged to him (Ex. 1, sub-exhibit A16–A24).

Petitioner testified to the following:  (1) he first learned of the presence of cocaine in his vehicle was after he and Robert Scott were arrested, and during their transport to the police station; (2) at that time, he asked Scott, "What are you doing, what did you do?" and Scott told him that he dropped some cocaine in the car, and that he told the officer it was his (Scott's); (3) Petitioner asked Officer Bianchi why he was arresting him for Scott's cocaine, and Bianchi responded that Petitioner was going back to prison, and that he (Bianchi) did not want Petitioner on the street; (4) he did not admit to a doctor that he had taken drugs, he simply stated he was dehydrated; (5) he did not reach behind the passenger seat; (6) he did not place the baggies behind the passenger seat; (7) he did not make any statements to the officer accusing him of planting the drugs; (8) he did not have any knowledge of any illegal substance or paraphernalia in the car; and (9) prior to Scott's getting in the car, he asked Scott if he had any drugs or weapons, and Scott said no (Ex. 1, sub-exhibit A74–A87).

"Determining the credibility of witnesses is the province and function of the state courts, not a federal court engaging in habeas review." Consalvo v. Sec'y for Dep't of Corr., 664 F.3d 842, 845 (11th Cir. 2011); see also Marshall v. Lonberger, 459 U.S. 422, 434, 103 S. Ct. 843,74 L. Ed. 2d 646 (1983) (federal habeas courts have "no license to redetermine credibility of witnesses whose demeanor has been observed by the state trial court, but not by them"); Gore v. Sec'y for Dep't of Corr., 492 F.3d 1273, 1300 (11th Cir. 2007) (noting that while reviewing court also gives a certain amount of deference to credibility determinations, that deference is heightened on habeas review) (citing Rice v. Collins, 546 U.S. 333, 341–42, 126 S. Ct. 969, 163 L. Ed. 2d 824 (2006) (stating that "[r]easonable minds reviewing the record might disagree about the [witness'] credibility, but on habeas review that does not suffice to supersede the trial court's credibility determination")); Baldwin v. Johnson, 152 F.3d 1304, 1317 (11th Cir. 1998) (same); Smith v. Kemp, 715 F.2d 1459, 1465 (11th  Cir. 1983) ("Resolution of conflicts in evidence and credibility issues rests within the

province of the state habeas court, provided petitioner has been afforded the opportunity to a full and fair hearing.").  Questions of the credibility and demeanor of a witness are questions of fact.  *See* Consalvo, *supra* (citing Freund v. Butterworth, 165 F.3d 839, 862 (11th Cir. 1999) (en banc)).  The AEDPA affords a presumption of correctness to a factual determination made by a state court; the habeas petitioner has the burden of overcoming the presumption of correctness by clear and convincing evidence.  *See* 28 U.S.C. § 2254(e).

Additionally, this court must abide by the state court's interpretation of state law.  *See* Bradshaw v. Richey, 546 U.S. 74, 76, 126 S. Ct. 602, 163 L. Ed. 2d 407 (2005); Mullaney v. Wilbur, 421 U.S. 684, 691, 95 S. Ct. 1881, 44 L. Ed. 2d 508 (1975).

The hearing examiner heard firsthand the testimony of Officer Bianchi, Robert Scott, and Petitioner himself, and weighed the credibility of the testimony.  The examiner found Officer Bianchi's testimony more credible than Petitioner's with regard to Petitioner's reaching behind the passenger's seat and making statements suggesting he knew that cocaine was in the vehicle.  The state court determined that this evidence was sufficient to satisfy the elements of the crime of possession of cocaine under Florida law.  In light of the hearing examiner's findings and the record before the FCOR and the state court, Petitioner failed to demonstrate that the state court's adjudication of his sufficiency-of-the-evidence claim was based upon an unreasonable determination of the facts.  Additionally, Petitioner failed to demonstrate that the court's adjudication was contrary to or an unreasonable application of clearly established federal law.[5]  Therefore, Petitioner is not entitled to federal relief on his Ground One.

B.      Ground Two:  "The curfew violation was not willful and substantial."

---

[5] Even though the State Attorney's Office nolle prossed the criminal drug possession charge against Petitioner (*see* Ex. 1, sub-exhibit A6–A7), that fact does not change this conclusion.  *See* United States v. Jolibois, 294 F.3d 1110, 1114 (9th Cir. 2002) (upholding a revocation of supervised release based upon actual conduct where the defendant was not prosecuted for that conduct); Taylor v. U.S. Parole Comm'n, 734 F.2d 1152, 1155 (6th Cir. 1984) (parole violation may be based on criminal charges that were dismissed prior to trial) (internal citation omitted); State v. Jenkins, 762 So. 2d 535 (Fla. 4 DCA 2000) (affidavit of probation violation did not have to be dismissed on the ground that the state had nolle prossed the assault charge that was the basis for the violation of probation, as nolle prosequi at most meant that the state did not have sufficient evidence to meet its burden of proving guilt beyond a reasonable doubt, which was a higher standard than was required to prove the probation violation); *see also* Russ v. State, 313 So. 2d 758, 760 (Fla. 1975) ("An acquittal in a criminal case does not preclude the judge from determining that a parole or probation violation has occurred based upon the same conduct); State v. Green, 667 So. 2d 959, 961 (Fla. 2d DCA 1996) (same); Cavalcante v. Fla. Parole and Prob. Comm'n, 414 So. 2d 658, 659 (Fla. 1st DCA 1982) (same).

Petitioner asserts the evidence was insufficient to show that the curfew violation was willful and substantial (doc. 1 at 10–13). He asserts that the evidence adduced at the revocation hearing (specifically, his testimony, the testimony of his mother and sister (the owners of the pizzeria where he was employed), and his employee time card) showed that the reason he was out past his curfew was because he was working at the pizzeria, and that he did not intend to work past his curfew, but his employers required that he do so and he lost track of time (*id.*). Petitioner contends the hearing examiner's findings of fact as to this violation were unreasonable, incorrect, and unsupported by a preponderance of the evidence (*id.*). He contends the FCOR's revocation decision was based upon an unreasonable determination of the facts, and contrary to and an unreasonable application of Morrissey, 408 U.S. at 471 (*id.* at 13). He asserts he presented this claim to the state courts in his state habeas petition and his petition for writ of certiorari (*id.* at 13–14).

The FCOR admits that this claim "appears" to be exhausted (doc. 8 at 5). As with Ground One, the FCOR argues that this court is without jurisdiction to review this claim, because Petitioner has not raised any issues of federal constitutional dimension and instead challenges only state law and the application of that law to his particular circumstances (*id.* at 7–10). The FCOR alternatively argues that Petitioner's claim is without merit, because he failed to demonstrate that the state court's adjudication of his claim was based upon an unreasonable determination of the facts, or was contrary to or an unreasonable application of clearly established federal law (*id.* at 14–15).

      1.      Clearly Established Federal Law

The federal standard governing this claim is set forth *supra*.

      2.      Federal Review of State Court Decision

Petitioner raised this claim as his third ground for relief in his state habeas petition (Ex. 1 at 140–45). The state circuit court adjudicated the claim as follows:

> Plaintiff next asserts that the curfew violation was not willful or substantial. He cites Cruz v. State, 81 So. 3d 501 (Fla. 4th DCA 2012), in support of a lack of willfulness or substantiality.

> Plaintiff was found guilty of the curfew violation based on his admission. An admission to a supervision violation is sufficient grounds for a finding of guilt and subsequent revocation of early release. Russell v. McGlothin, 427 So. 2d 280 (Fla. 2nd DCA 1983); Russell v. Fla. Parole Comm'n, 946 So. 2d 32 (Fla. 1st DCA 2006).

Further, the Court finds the decision in <u>Cruz</u> to be distinguishable.  Here, the Conditional Release supervising officer clearly testified that the Plaintiff <u>did not</u> have permission to be out after 10:00 p.m., that Plaintiff had been expressly advised of that and that any previous permissions had been specifically recalled based on changed work circumstances.  Unlike Cruz, Plaintiff had no confusion as to whether he was allowed to be out past his curfew based on prior permissions.

Furthermore, Plaintiff testified as follows:

> I just want to state for the record that on that night in question, I was not planning to work late.  I have been there for well over 12 hours. It was brought to my attention that I must stay late because my brother-in-law that usually does the general cleanup cannot be there. The time actually slipped from me.  I mean, it wasn't something that I totally conscious of.  By the time I looked up, it was way past 11 o'clock.  We were already leaving, you know what I mean.  It was just something that I got caught into doing.  I had a lot of stuff to do. From the moment that we began to the moment that we finished, it was nonstop work.  If I would have had an inclination, if I would have time to remember and call [sic].  And I'm sure if I would have left that message, I mean, I wouldn't be in this predicament that I am right now as far as the question whether I intentionally violated my conditions or whether I didn't.

(Plaintiff's Exhibit A81–A82).

The Plaintiff had prior knowledge that he was going to work late and that at some point "*way past 11 o'clock*" he became aware of the time and made no effort to gain permission or notify his supervising officer.  He was aware of his non-compliance sometime in the process of leaving work and chose not to at least try to contact his supervising officer.  Whatever alleged nonwillfulness that may have existed, evaporated upon his awareness of his curfew non-compliance and failure to take corrective action.

The Court further finds that the curfew violation was substantial.  Plaintiff was not only charged with violating his curfew, he was charged and it was proven at his violation hearing that he was in the possession of illegal drugs during the time he was in non-compliance with his curfew.  These facts elevate the substantiality of the curfew violation.

(Ex. 5 at 334–35).  Petitioner sought review of the circuit court's decision on this issue by presenting argument on it in his petition for writ of certiorari in the First DCA (Ex. 6 at 5–6).  The First DCA denied the petition on the merits (Ex. 10).

Special Condition 16 of Petitioner's conditional release required that Petitioner be confined to his residence during the hours from 10:00 p.m. to 6:00 a.m., except for work, treatment needs, and religious and educational activities as verified and approved by Petitioner's conditional release supervisor (Ex. 3, sub-exhibit B).  Petitioner was charged with violating Special Condition 16 by not being confined to his approved residence at 12:27 a.m. on November 18, 2011, as evidenced by his arrest on that date and time (Ex. 3, sub-exhibit H).  The hearing examiner found Petitioner guilty of the violation based upon (1) Officer Bianchi's testimony that at approximately 12:27 a.m. on November 18, 2011, he stopped a vehicle driven by Petitioner; (2) testimony of Jose Borro, Petitioner's conditional release supervisor, that Petitioner did not have permission to be out beyond his curfew; and (3) Petitioner's testimony admitting that he was out beyond his curfew without permission (Ex. 3, sub-exhibit I).

The factual findings of the hearing examiner and the state court with regard to the substance of the testimony by Petitioner, Mr. Borro, and Officer Bianchi are supported by the record.  Officer Bianchi testified that at approximately 12:27 a.m. on November 18, 2011, he stopped a vehicle driven by Petitioner (Ex. 1, sub-exhibit A at A25–26, A34).  Mr. Borro testified that Petitioner did not have permission to be away from his residence during curfew hours on November 18, 2011 (*id.* at A59).  Petitioner testified he was working at a pizzeria owned by his mother and sister until 12:09 a.m. on November 18, 2011 (*id.* at A79–83).  He testified that he was aware of his curfew; that he was out after his curfew; and that he did not have permission from his conditional release supervisor to be out past his curfew (*id.*).  Petitioner's employee time record and the testimony of his mother and sister corroborated that he was working until after midnight on November 18, 2011 (*see id.* at A60–A73).

In light of the hearing examiner's findings and the record before the FCOR and the state court, Petitioner failed to demonstrate the state court's determination, that the curfew violation was willful and substantial, was based upon an unreasonable determination of the facts, or was contrary

to or an unreasonable application of clearly established federal law.  Therefore, Petitioner is not entitled to federal relief on Ground Two.

> C.      Ground Three: "The curfew violation was not charged in the warrant or the violation report that was filed in this case and therefore the Commission erred by revoking Petitioner's parole for the uncharged violation."

Petitioner asserts the curfew violation was not included in the parole violator warrant issued November 21, 2011, or the violation report dated November 21, 2011; therefore, he did not receive proper notice of that violation (doc. 1 at 14–17).  He additionally argues that the curfew requirement was not a mandatory condition of his release, because Florida law mandates it as a condition only for crimes committed on or after October 1, 1995, and he committed his underlying crimes in March of 1995 (*id.*).  Petitioner thus contends the curfew violation could not serve as a legal basis for revoking his conditional release (*id.*).

The FCOR contends Petitioner failed to exhaust Ground Three (doc. 8 at 5–7, 16).  The FCOR argues that although Petitioner raised the notice issue in his state habeas petition, he abandoned it in the certiorari proceedings by failing to argue it in his petition for certiorari review (*id.* at 6–7).  Alternatively, the FCOR contends the state court's adjudication of the claim was not contrary to or an unreasonable application of clearly established federal law (*id.* at 16–19).

In Petitioner's reply, he contends he sufficiently argued these issues in his certiorari petition (doc. 10 at 2–3).

It is a long-standing prerequisite to the filing of a federal habeas corpus petition that the petitioner have exhausted available state court remedies, *see* 28 U.S.C. § 2254(b)(1), thereby giving the State the "'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights."  Duncan v. Henry, 513 U.S. 364, 365, 115 S. Ct. 887, 130 L. Ed. 2d 865 (1995) (quoting Picard v. Connor, 404 U.S. 270, 275, 92 S. Ct. 509, 30 L. Ed. 2d 438 (1971) (citation omitted)).  To satisfy the exhaustion requirement, the petitioner must "fairly present" his claim in each appropriate state court, alerting that court to the federal nature of the claim.  Duncan, 513 U.S. at 365–66; O'Sullivan v. Boerckel, 526 U.S. 838, 845, 119 S. Ct. 1728, 144 L. Ed. 2d 1 (1999); Picard, 404 U.S. at 277–78.

The Supreme Court has provided lower courts with guidance for determining whether a habeas petitioner has met the "fair presentation" requirement.  In Picard v. Connor, the Court held that, for purposes of exhausting state remedies, a claim for relief in habeas corpus must include reference to a specific federal constitutional guarantee, as well as a statement of the facts which entitle the petitioner to relief.  404 U.S. at 277.  In announcing that "the substance of a federal habeas corpus claim must first be presented to the state courts," id., 404 U.S. at 278, the Court rejected the contention in that case that the petitioner satisfied the exhaustion requirement by presenting the state courts only with the facts necessary to state a claim for relief.

Additionally, the Court has indicated that it is not enough that a petitioner make a general appeal to a constitutional guarantee as broad as due process to present the "substance" of such a claim to a state court.  Anderson v. Harless, 459 U.S. 4, 103 S. Ct. 276, 74 L. Ed. 2d 3 (1982).  In Anderson, the habeas petitioner was granted relief by the Sixth Circuit Court of Appeals on the ground that a jury instruction violated due process because it obviated the requirement that the prosecutor prove all the elements of the crime beyond a reasonable doubt.  459 U.S. at 7 (citing Sandstrom v. Montana, 442 U.S. 510, 99 S. Ct. 2450, 61 L. Ed. 2d 39 (1979)).  The only manner in which the habeas petitioner cited federal authority was by referring to a state court decision in which "the defendant . . . asserted a broad federal due process right to jury instructions that properly explain state law."  Anderson, 459 U.S. at 7 (internal quotation marks omitted).  The Court expressed doubt that a defendant's citation to a state-court decision predicated solely on state law was sufficient to fairly apprise a reviewing court of a potential federal claim merely because the defendant in the cited case advanced a federal claim.  Id., 459 U.S. at 7 & n.3.  Furthermore, the Court clarified that such a citation was obviously insufficient when the record satisfied the federal habeas court that the federal claim asserted in the cited case was not the same as the federal claim on which federal habeas relief was sought.  Id.

Years later, the Supreme Court readdressed the "fair presentation" requirement in Duncan v. Henry, 513 U.S. 364.  The Duncan Court strictly construed the exhaustion requirement so as to mandate that, if state and federal constitutional law overlap in their applicability to a petitioner's claim, the petitioner must raise his issue in terms of the applicable federal right in state court in order

to obtain federal review of the issue.[6]  The Supreme Court explained, "[i]f a habeas petitioner wishes to claim that an evidentiary ruling at a state court trial denied him the due process of law guaranteed by the Fourteenth Amendment, he must say so, not only in federal, but in state court."  Duncan, 513 U.S. at 365–66.  More recently, the Supreme Court again focused upon the requirement of "fair presentation," holding that "ordinarily a state prisoner does not 'fairly present' a claim to a state court if that court must read beyond a petition or a brief (or a similar document) that does not alert it to the presence of a federal claim in order to find material, such as a lower court opinion in the case, that does so."  Baldwin v. Reese, 541 U.S. 27, 124 S. Ct. 1347, 158 L. Ed. 2d 64 (2004).  In Baldwin, the Supreme Court recognized that "[a] litigant wishing to raise a federal issue can easily indicate the federal law basis for his claim in a state-court petition or brief, for example, by citing in conjunction with the claim the federal source of law on which he relies or a case deciding such a claim on federal grounds, or by simply labeling the claim 'federal.'"  Id., 541 U.S. at 32.  This language, while not part of the Court's holding, provides helpful instruction.  With regard to this language, the Eleventh Circuit explained in McNair v. Campbell, 416 F.3d 1291 (11th Cir. 2005):

> If read in a vacuum, this dicta might be thought to create a low floor indeed for petitioners seeking to establish exhaustion.  However, we agree with the district court that this language must be "applied with common sense and in light of the purpose underlying the exhaustion requirement[:] 'to afford the state courts a meaningful opportunity to consider allegations of legal error without interference from the federal judiciary.'"  McNair [v. Campbell], 315 F. Supp. 2d at 1184 (quoting Vasquez v. Hillery, 474 U.S. 254, 257, 106 S. Ct. 617, 620, 88 L. Ed. 2d 598 (1986)).  This is consistent with settled law established by the Supreme Court. . . .  We therefore hold that "'[t]he exhaustion doctrine requires a habeas applicant to do more than scatter some makeshift needles in the haystack of the state court record.'"

416 F.3d at 1302-03 (citations omitted).[7]

---

[6] The petitioner in Duncan raised a federal due process claim in his habeas petition, but had raised only a state constitutional claim in his state appeal.  Presented with a state constitutional claim, the state court applied state law in resolving the appeal.  513 U.S. at 366.

[7] In his initial brief before the Court of Criminal Appeals, McNair cited one federal case in a string citation containing other state cases, and in a closing paragraph in his argument that extraneous materials were considered by the jury during deliberations, stated that there was a violation of his rights "protected by the Fifth, Sixth, Eighth[,] and Fourteenth Amendments to the United States Constitution, the Alabama Constitution[,] and Alabama law."  McNair v. Campbell, 416 F.3d 1291, 1303 (11th Cir. 2005).  The court found that these references to federal law were not sufficient to meet the fair presentment requirement and noted that it was important that the petitioner had never mentioned the

The Eleventh Circuit, prior to <u>Duncan</u>, had broadly interpreted the "fair presentation" requirement.  After <u>Duncan</u>, however, the Eleventh Circuit has taken a more narrow approach.  For example, in <u>Zeigler v. Crosby</u>, the court held that the habeas petitioner failed to "fairly present" his juror misconduct claims to the state courts where his brief to the state appellate court did not refer to the federal constitutional issues raised in his federal habeas petition, and none of the cases cited in his direct appeal discussed the United States Constitution.  345 F.3d 1300, 1307 (11th Cir. 2003).  The Eleventh Circuit specifically noted that the section of the petitioner's appellate brief which dealt with juror misconduct contained the words:  "Appellant was denied due process and a fair trial. . . .," which could be interpreted as asserting a fair trial claim under the Due Process Clause of the Florida Constitution.  *Id.* at 1308 n.5.  The only cases cited in the discussion of the issue in petitioner's state appellate brief were state supreme court cases that made no mention of the United States Constitution and cited no federal cases.  The court concluded that petitioner's "[c]ursory and conclusional sentence (unaccompanied by citations to federal law), . . . did not present to the Florida courts the federal claim asserted to us."  *Id.*

An issue that was not properly presented to the state court and which can no longer be litigated under state procedural rules is considered procedurally defaulted, that is, procedurally barred from federal review.  *See* <u>O'Sullivan</u>, 526 U.S. at 839–40, 848; <u>Bailey v. Nagle</u>, 172 F.3d 1299, 1302–03 (11th Cir. 1999).  This court will also consider a claim procedurally defaulted if it was presented in state court and rejected on the independent and adequate state ground of procedural bar or default.  *See* <u>Coleman v. Thompson</u>, 501 U.S. 722, 734–35 and n.1, 111 S. Ct. 2546, 115 L. Ed. 2d 640 (1991); <u>Caniff v. Moore</u>, 269 F.3d 1245, 1247 (11th Cir. 2001) ("[C]laims that have been held to be procedurally defaulted under state law cannot be addressed by federal courts."); <u>Chambers v. Thompson</u>, 150 F.3d 1324, 1326–27 (11th Cir. 1998) (applicable state procedural bar should be enforced by federal court even as to a claim which has never been presented to a state court); *accord* <u>Tower v. Phillips</u>, 7 F.3d 206, 210 (11th Cir. 1993); <u>Parker v. Dugger</u>, 876 F.2d 1470 (11th Cir. 1990), *rev'd on other grounds*, 498 U.S. 308, 111 S. Ct. 731, 112 L. Ed. 2d 812 (1991).  In the first

---

federal standards regarding extraneous materials in his brief, but relied on state law for his arguments.  *Id.*

instance, the federal court must determine whether any future attempt to exhaust state remedies would be futile under the state's procedural default doctrine.  Bailey, 172 F.3d at 1303.

To overcome a procedural default such that the federal habeas court may consider the merits of a claim, the petitioner must show cause for the default and prejudice resulting therefrom or a fundamental miscarriage of justice.  Tower, 7 F.3d at 210; Parker, 876 F.2d 1470.  "For cause to exist, an external impediment, whether it be governmental interference or the reasonable unavailability of the factual basis for the claim, must have prevented petitioner from raising the claim."  McCleskey v. Zant, 499 U.S. 467, 497, 111 S. Ct. 1454, 113 L. Ed. 2d 517 (1991) (quoting Murray v. Carrier, 477 U.S. 478, 488, 106 S. Ct. 2639, 91 L. Ed. 2d 397 (1986)).  To satisfy the miscarriage of justice exception, the petitioner must show that "a constitutional violation has probably resulted in the conviction of one who is actually innocent."  Schlup v. Delo, 513 U.S. 298, 327, 115 S. Ct. 85, 130 L. Ed. 2d 808 (1995).

Under Florida law, final actions of the FCOR may be appealed by filing a petition for writ of habeas corpus or mandamus in the Florida circuit courts.  See Fla. R. App. P. 9.030(c); see also Richardson v. Fla. Parole Comm'n, 924 So. 2d 908, 910 (Fla. 1st DCA 2006) ("Review of the [Parole] Commission's orders remains available by petitions for habeas corpus or mandamus filed in the circuit court.").  The denial of the writ of habeas corpus may then be reviewed by filing a writ of certiorari in the appropriate Florida district court of appeal within thirty days.  See Fla. R. App. P. 9.030(b)(2),  9.100(c)(1);  see also Richardson, 924 So. 2d at 910 ("Review of a circuit court's ruling in [reviewing Parole Commission's orders] may be sought by a petition for writ of certiorari in the district court of appeal.").

The state court record demonstrates that in Petitioner's state habeas petition, he argued that the curfew violation was not charged in the violator warrant or the original violation report, as required under Florida law (Ex. 1 at 145–46).  Nowhere in his state habeas petition did he argue that the curfew requirement was not a mandatory condition of his release.  Additionally, Petitioner did not fairly present either issue in his certiorari petition (Ex. 6).  Therefore, the claims asserted in Ground Three are unexhausted and procedurally barred.  Petitioner does not allege cause for his failure to argue these issues in his petition for review; nor do his allegations qualify for review under

the "fundamental miscarriage of justice" exception to the procedural bar.  Therefore, he is not entitled to federal review of the merits of Ground Three.

Moreover, Petitioner failed to demonstrate a federal due process violation with respect to the curfew violation.  In Morrissey, 408 U.S. at 485–89, the Supreme Court set forth the process that is due to a parolee arrested for violating his parole.  The Court held that upon a parolee's arrest for a parole violation, due process requires that a preliminary hearing be conducted, at or reasonably near the place of the alleged parole violation or arrest and as promptly as convenient after the arrest, to determine whether there is probable cause or reasonable ground to believe that the parolee committed acts that would constitute a violation of the conditions of his parole.  Id. at 485 (citation omitted).  The Court noted that the preliminary hearing should be conducted by someone other than the parole officer who reported the violations.  Id. at 486.  The Court held that the parolee should be given notice that the preliminary hearing will take place and that its purpose is to determine whether there is probable cause to believe he committed a parole violation; and the notice should state what parole violations have been alleged.  Id. at 487.  The Court further held that at the hearing the parolee may appear, speak in his own behalf, and present relevant information.  Id.  Further, on request of the parolee, the person who gave adverse information on which parole revocation is to be based should be made available for questioning; however, if the hearing officer determines that an informant would be subjected to risk of harm if his identity were disclosed, he need not be subjected to confrontation and cross-examination.  Id.  The Court also held that the hearing officer must make a summary of what occurred at the hearing, determine whether there is probable cause to hold the parolee for the final decision of the parole board on revocation, and state the reasons for his determination and indicate the evidence he relied on, but formal findings of fact and conclusions of law are not required.  Id.

Additionally, the Court held that if the parolee desires a hearing prior to the final decision on revocation, due process requires that a hearing be held.  Id. at 488.  At the final hearing, minimum requirements of due process include:

> (a) written notice of the claimed violations of parole; (b) disclosure to the parolee of evidence against him; (c) opportunity to be heard in person and to present witnesses and documentary evidence; (d) the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not

allowing confrontation); (e) a 'neutral and detached' hearing body such as a traditional parole board, members of which need not be judicial officers or lawyers; and (f) a written statement by the factfinders as to the evidence relied on and reasons for revoking parole.

Morrissey, 408 U.S. at 488–89.  In Gagnon v. Scarpelli, 411 U.S. 778, 786, 93 S. Ct. 1756, 36 L. Ed. 2d 656 (1973), the Supreme Court held that those requirements apply to probation revocation proceedings.  A conditional releasee is entitled to the same level of procedural protections as a parolee or a probationer, that is, the protections outlined in Morrissey.  *See, e.g.,* Schmidt v. Bondi, No. 5:12cv226/MMP/EMT, 2012 WL 4717794, at *2 (N.D. Fla. Oct. 1, 2012).

Here, the state court record demonstrates that Petitioner received notice of the alleged curfew violation.   Both Petitioner and his counsel signed the Amended Notice of Hearing on Conditional/Control Release Violation, which clearly alleged the curfew violation (Ex. 3, sub-exhibit H).   Further, Petitioner was prepared to defend the curfew violation, as evidenced by the presence of witnesses who testified solely as to the curfew issue, and Petitioner's presenting his employee time card as evidence.   Thus, he had sufficient notice of the curfew violation to enable him to prepare and present a defense, which is all that Morrissey requires.   Additionally, Petitioner's contention that the curfew provision was not a mandatory condition of his conditional release is unavailing.  On April 15, 2010, Petitioner signed a Certificate of Conditional Release and Terms and Conditions of Supervision (Ex. 3, sub-exhibit B).   Although Petitioner refused to sign the page that listed the curfew condition, his refusal to agree to it did not invalidate it as a condition, nor did it vitiate its mandatory nature.[8]   Furthermore, Petitioner's testimony during the revocation hearing demonstrated that he understood that the curfew requirement was a mandatory condition of his release.   Therefore, Petitioner's claim is without merit notwithstanding his failure to exhaust it.  *See* 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.").

IV.   CERTIFICATE OF APPEALABILITY

---

[8] It matters not whether a curfew condition was required by law.  The FCOR had the discretion to impose a curfew condition, and upon its doing do Petitioner was required to abide by it.

As amended effective December 1, 2009, § 2254 Rule 11(a) provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)."  A timely notice of appeal must still be filed, even if the court issues a certificate of appealability.  Rule 11(b), Rules Governing Section 2254 Cases.

The undersigned finds no substantial showing of the denial of a constitutional right.  28 U.S.C. § 2253(c)(2); Slack v. McDaniel, 529 U.S. 473, 483–84, 120 S. Ct. 1595, 1603–04, 146 L. Ed. 2d 542 (2000) (explaining how to satisfy this showing) (citation omitted).  Therefore, the undersigned recommends that the district court deny a certificate of appealability in its final order.

The second sentence of new Rule 11(a) provides:  "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue."  Thus, if there is an objection to this recommendation by either party, that party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation.

Accordingly, it is respectfully **RECOMMENDED**:

1.     That the petition for writ of habeas corpus (doc. 1) be **DENIED**.

2.     That a certificate of appealability be **DENIED**.

At Pensacola, Florida, this 10th day of August 2015.


/s/ Elizabeth M. Timothy
**ELIZABETH M.  TIMOTHY**
**CHIEF UNITED STATES MAGISTRATE JUDGE**

## NOTICE TO THE PARTIES

       **Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control</u>.  A copy of objections shall be served upon all other parties.  If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.  *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.**